IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:20-CT-3300-BO

| | |
|---|---|
| JUSTIN JARELL EASON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| PATRICK VAUGHN, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on defendant Vaughn's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 [D.E. 44]. Plaintiff responded in opposition to defendant's motion. In this posture, the issues raised are ripe for adjudication. As explained below, the court denies defendant's motion.

## STATEMENT OF THE CASE

On September 23, 2020, Justin Jarell Eason ("plaintiff"), a state inmate proceeding *pro se*, filed a complaint pursuant to 42 U.S.C. § 1983, alleging that defendants Patrick Vaughn ("Vaughn") and Nurse Allan Bigornia ("Bigornia") violated his rights under the Eighth Amendment to the United States Constitution [D.E. 1]. On May 14, 2021, the court granted plaintiff's motions to amend the complaint, conducted its frivolity review of the complaint, and allowed the action to proceed [D.E. 17]. On December 20, 2021, the court granted defendant Bigornia's motion to dismiss [D.E. 36].

On July 11, 2022, defendant Vaughn moved for summary judgment [D.E. 44] and filed a memorandum in support, statement of material facts, and appendix [D.E. 45–46]. Pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), the court notified plaintiff about defendant's motion for summary judgment, the consequences of failing to respond, and the

response deadline [D.E. 47]. On July 20 and August 4, 2022, plaintiff responded in opposition to defendant's motion [D.E. 48, 50–52].

## STATEMENT OF THE FACTS

The allegations of plaintiff's complaint arose at Maury Correctional Institution ("Maury"). See Vaughn Decl. [D.E. 45-2] ¶ 3; Eason Decl. [D.E. 52] ¶ 2. On July 18, 2020, Correctional Officer Vaughn was working in the Red Unit at Maury, which is where plaintiff was housed. See Vaughn Decl. at ¶¶ 3–4; Eason Decl. ¶ 2. At around 5:00 a.m., plaintiff was being disruptive in his cell by screaming and cursing at Vaughn. See Vaughn Decl. at ¶ 4. Vaughn decided to take plaintiff out of his cell and bring him to Sergeant Mizell's ("Mizell") office so that Mizell could speak with him and try to calm him down. See id.

Before plaintiff exited his cell, Vaughn directed him to submit to hand restraints. See Vaughn Decl. at ¶ 5; Eason Decl. ¶ 3. Plaintiff complied with Vaughn's order by turning around, putting his hands behind his back, and then putting his hands out through the food passage slot so that Vaughn could place handcuffs on him. See Vaughn Decl. at ¶ 5. Once plaintiff was handcuffed, Vaughn radioed for his cell to be opened and they proceeded towards Mizell's office. See id. Vaughn escorted plaintiff to Mizell's office by himself. See Eason Decl. ¶ 13.

When they arrived at Mizell's office, Mizell was not there. See Vaughn Decl. at ¶ 6. Vaughn told plaintiff that he needed to take him back to his cell and that he would have Mizell come see him later. See id. The parties dispute whether plaintiff then became agitated and combative. Compare Vaughn Decl. at ¶ 7 with Eason Decl. at ¶ 7. According to Vaughn, plaintiff resisted walking back to his cell, bowed up at him, and started to pull against him. See Vaughn Decl. at ¶ 7. Plaintiff then made a motion and sound indicating that he was planning to spit on Vaughn. See id. In response to plaintiff's actions, Vaughn used an open hand and clapped it over plaintiff's face to stop him from

2

spitting and used the mandibular angle pressure point technique to gain compliance. See Vaughn Decl. at ¶¶ 8, 10. Vaughn states that the amount of force used was minimal and that he did not strike plaintiff with a closed fist at any time during the incident. See Vaughn Decl. at ¶ 9; see also Vaughn Witness Statement [D.E. 50-1] 78 ("On 18 July 2020 at approximately 0435 hrs. I (Patrick Vaughan) was feeding the breakfast trays in LPOD-C (Restrictive Housing Unit). I attempted to secure the food passage door of Offender Justin Eason #1075878. Upon doing so Offender Eason began cursing at me stating 'get the fuck away from my door or I'm going to gas you.' I instructed him to calm down and eat his breakfast, to which he replied 'Fuck you.' After many attempts to defuse the situation, I decided to remove him from the pod and take him to speak to the Unit Sgt. Once in the hallway the offender became combative resisting staff orders to return to [his] cell. Offender Eason then attempted to spit on staff at which time he was placed on a hard surface 'the wall' with my right hand I attempted to apply pressure to the mandibular angle nerve point on the left side of Offender Eason's jaw, in order to turn his head away from mine to prevent him from spitting.").

According to plaintiff, he never threatened to spit on Vaughn. See Eason Decl. at ¶ 8. When they were in the hallway, Vaughn punched him in the head and neck repeatedly with a closed fist. See Eason Decl. at ¶¶ 4, 11. Officer Jimmy Prayer ("Prayer") witnessed the incident and pulled Vaughn away from plaintiff. See Eason Decl. at ¶ 9; see also Prayer Witness Statement [D.E. 48-1] 24 ("On 7-18-20 approximately 0520 I Officer Prayer witness Officer Vaughan slap offender Justin Eason # 1075878 in the face, on lower Red Corridor."). Plaintiff states that he was never a threat to Vaughn and that the amount of force used was not minimal. See Eason Decl. at ¶¶ 15–16; see also Eason Witness Statement [D.E. 48-1] 25 ("Between 5:00 am and 5:10 am I was assaulted by Officer Vaughn. He had repeatedly punched me in the head for no reason while I was in handcuffs. My hands was restrained behind my back and I could not defend myself. He took me to the hallway at

3

breakfast. And he took advantage of the situation and hit me all because he could get away with it. Officer Prayer was standing there and witnessed the whole assault he had to calm his co-worker down. This all happened in Lower red hallway in front of the srgt office. My neck and back hurt and I have a bad headache. I was standing peacefully when all this happened. He got mad because I asked to talk to the srg, so he took me to the hallway just to jump on me. Why else would I be in the hallway at 5:00 am in the morning on [7]/18/20?").

After the incident, Vaughn reported it as a "use of force" incident and plaintiff was immediately taken for a medical screening. See Vaughn Decl. at ¶¶ 11–12. At 5:33 a.m., Nurse Bigornia evaluated plaintiff, noted there were no visible signs of injury, and noted that plaintiff stated he was "good." See Def.'s Ex. 5 [D.E. 45-6] 1. Plaintiff contends his injuries were recorded incorrectly and filed a self-declared medical emergency. See Eason Decl. at ¶¶ 5–6. At 9:31 a.m., plaintiff returned to medical and complained of head, neck, and back pain. See Pl.'s Ex. [D.E. 48-1] 12–13. Plaintiff was prescribed acetaminophen for five days and muscle rub cream for seven days. See id. at 13.

On July 24, 2020, plaintiff filed a grievance regarding the use of force incident with Vaughn. See Pl.'s Ex. [D.E. 50-1] 14. On September 10, 2020, plaintiff received a step three response which stated that "force was used unjustifiab[ly]" against him, that the matter was "under investigation at the facility," and that "appropriate action [would be] taken by [the North Carolina Department of Public Safety] to address t[he] matter." Id. at 16.

On September 25, 2020, the North Carolina Department of Public Safety's Office of Special Investigations submitted an internal investigation report regarding the incident. See Pl.'s Ex. [D.E. 50-1] 33–41. The investigative report found in part that:

On July 18, 2020, Captain, (Capt.) Donigel White reported to Associate Warden,

4

(AW) John Gray that Correctional Officer, (CO) Patrick Vaughan admitted to slapping offender Justin Eason, OPUS # 1075878 in the face after offender Eason threatened to spit on CO Vaughn after leaving the sergeant's office. AW Gray reported the incident to the Office of Special Investigations (OSI) on July 18, 2020.

Id. at 39.

The investigative report also stated that:

Patrick Scott Vaughan, Correctional Officer (CO) did not make himself available for an interview. On July 21, 2020, CO Vaughan went out on FMLA with an expected return date of October 12, 2020. On September 23, 2020, Investigator Heffney was advised via e-mail from AS Tyndall that CO Vaughan has stopped responding to calls and e-mail messages sent by facility management. On October 2, 2020, CO Vaughan orally submitted his resignation effective for July 21, 2020.

Id.

Plaintiff suffers from back pain as a result of the use of force incident. See Eason Decl. at ¶ 10. "Sharp waves of pain shoot through [plaintiff's] back when [he] stand[s] or lay[s] down to[o] long." Id. Plaintiff alleges that Vaughn used excessive force against him in violation of his Eighth Amendment rights. The parties have not submitted any video recording.

**DISCUSSION**

Summary judgment is appropriate when, after reviewing the record as a whole, the court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a); Scott v. Harris, 550 U.S. 372, 378 (2007); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment must initially demonstrate the absence of a genuine issue of material fact or the absence of evidence to support the nonmoving party's case. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, see Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,

5

475 U.S. 574, 587 (1986) (emphasis and quotation omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. See Anderson, 477 U.S. at 248–49. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. See Scott, 550 U.S. at 378.

To show that a prison official used excessive force and violated the Eighth Amendment, a prisoner must establish "more than indifference, deliberate or otherwise. The [prisoner] must show that officials applied force maliciously and sadistically for the very purpose of causing harm." Farmer v. Brennan, 511 U.S. 825, 835 (1994) (quotations omitted). To succeed, the claimant must show that "the officials acted with a sufficiently culpable state of mind" and that "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation[.]" Hudson v. McMillian, 503 U.S. 1, 8 (1992) (quotations and alteration omitted); see Farmer, 511 U.S. at 834–36.

"The core judicial inquiry ... [is] not whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (per curiam) (quotations omitted); see Thompson v. Virginia, 878 F.3d 89, 101 (4th Cir. 2017); United States v. Gore, 592 F.3d 489, 494 (4th Cir. 2010). Factors relevant to determining the prison official's state of mind include: "(1) the necessity for the application of force; (2) the relationship between the need for force and the amount of force used; (3) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them at the time; and (4) the efforts made to temper the severity of the force applied." Tedder v. Johnson, 527 F. App'x 269, 272 (4th Cir. 2013) (unpublished) (quotations omitted); see Whitley, 475 U.S. at 321. Moreover, "[t]he objective component of an excessive force claim is not nearly as demanding ...

6

because when prison officials maliciously and sadistically use force to cause harm, ... contemporary standards of decency are always violated, whether or not significant injury" results. Boone v. Stallings, 583 F. App'x 174, 176 (4th Cir. 2014) (per curiam) (unpublished) (cleaned up).

Genuine issues of material fact preclude summary judgment. See, e.g., Wilkins, 559 U.S. at 38; Poindexter v. Sandy, No. 21-6638, 2022 WL 1656126, at *2–6 (4th Cir. 2022) (per curiam) (unpublished); Love v. Beasley, 788 F. App'x 935, 937 (4th Cir. 2020) (per curiam) (unpublished); Servidio v. Pittman, 632 F. App'x 747, 749–50 (4th Cir. 2015) (per curiam) (unpublished); Parker v. Stevenson, 625 F. App'x 196, 198–99 (4th Cir. 2015) (per curiam) (unpublished); Ussery v. Mansfield, 786 F.3d 332, 337–38 (4th Cir. 2015); Boone, 583 F. App'x at 176–77. Thus, the court denies defendant's motion for summary judgment.

Defendant also asserts the affirmative defense of qualified immunity. See [D.E. 46] 8–9. Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In other words, a government official is entitled to qualified immunity when (1) the plaintiff has not demonstrated a violation of a constitutional right, or (2) the court concludes that the right at issue was not clearly established at the time of the official's alleged misconduct. See Pearson v. Callahan, 555 U.S. 223, 236 (2009).

The record precludes a determination of qualified immunity at this time. See Brooks v. Johnson, 924 F.3d 104, 119 (4th Cir. 2019); Ussery, 786 F.3d at 338; Tedder, 527 F. App'x at 274. Thus, the court denies without prejudice defendant's motion for summary judgment as to qualified immunity.

## CONCLUSION

In sum, the court DENIES defendant's motion for summary judgment [D.E. 44]. The court

7

REFERS this action to Magistrate Judge Robert B. Jones, Jr. for a court-hosted settlement conference. Judge Jones will notify the parties how he wishes to proceed. The court APPOINTS North Carolina Prisoner Legal Services, Inc. ("NCPLS") to assist plaintiff at the settlement conference. See Standing Order 21-SO-11 ¶ 7. The clerk shall send a copy of this order to notify NCPLS of its appointment.

SO ORDERED. This 20 day of March, 2023.

*Terrence Boyle*
TERRENCE W. BOYLE
United States District Judge